

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 6, 2022**



**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 20-40753-mxm-7 |
| WADE VOLNIA ROSENBURG, | § | |
| | § | CHAPTER 7 |
| DEBTOR. | § | |
| | § | |

---

| | | |
|---|---|---|
| TOXPRO LABORATORIES, LLC, D/B/A | § | |
| ROCKY TOXICOLOGY, | § | |
| HEIDI HOLLINGSWORTH, | § | |
| GARY HOLLINGSWORTH, AND | § | |
| ROCKY TOXICOLOGY, LLC, | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | ADVERSARY NO. 20-04046-mxm |
| V. | § | |
| | § | |
| WADE VOLNIA ROSENBURG, | § | |
| | § | |
| DEFENDANT. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
*[Relating to Adv. ECF No. 7]*

The Court held a trial to determine whether (i) the Plaintiffs'[1] liquidated claims against Mr. Wade Volnia Rosenburg ("**Mr. Rosenburg**") are nondischargeable under 11 U.S.C. § 523(a)(2), (4), and/or (6) and (ii) Mr. Rosenburg is entitled to a discharge under 11 U.S.C. § 727.

The Court has reviewed, analyzed, and considered the Complaint,[2] Answer[3], *Plaintiffs' Trial Brief*,[4] *Defendant's Trial Brief*,[5] the *Joint Pretrial Order*,[6] *Plaintiffs' Response to Defendant's Oral Motion for Directed Verdict*,[7] testimony of witnesses, exhibits admitted into evidence, and arguments of counsel. After due deliberation, the Court makes the following findings of fact and conclusions of law.[8]

## I      JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This proceeding is a core proceeding over which the Court has statutory and constitutional authority to enter final orders and judgments pursuant to 28 U.S.C. § 157(b)(2)(A), (I), (J), and (O). Even if the Court would not otherwise have the authority to enter a final judgment, the Court finds that the parties have consented to the Court's issuance of a final judgment in this proceeding. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

---

[1] Toxpro Laboratories, LLC, d/b/a Rocky Toxicology ("**ToxPro**"), Rocky Toxicology, LLC ("**Rocky Tox**"), Mr. Gary Hollingsworth ("**Mr. Hollingsworth**"), and Ms. Heidi Hollingsworth ("**Ms. Hollingsworth**"), (together, the "**Plaintiffs**") against Mr. Wade Volnia Rosenburg ("**Mr. Rosenburg**").

[2] *Plaintiffs' First Amended Complaint Objecting to Discharge of a Particular Debt*, Adv. ECF No. 7 (the "**Complaint**").

[3] *Answer to Plaintiffs' First Amended Complaint Objecting to Discharge of a Particular Debt*, Adv. ECF No. 23 (the "**Answer**").

[4] Adv. ECF No. 31.

[5] Adv. ECF No. 34.

[6] Adv. ECF No. 33.

[7] Adv. ECF No. 52.

[8] *See* Rule 52 F. R. Civ. P. as incorporated by F. R. Bankr. P. 7052.

## II.    FINDINGS OF FACT

### A.    Formation of ToxPro

In July of 2014, Mr. Hollingsworth and Ms. Hollingsworth formed and became members of ToxPro, a toxicology company that physicians utilized to screen and monitor their patients' urine samples for drugs or other chemicals. When ToxPro was formed, it outsourced its toxicology laboratory services to other laboratories. Shortly after ToxPro began operations, it decided to expand operations and purchase a toxicology laboratory.

During the Plaintiffs' search to acquire a toxicology laboratory, Mr. Rosenburg approached Mr. Hollingsworth and offered to sell Rocky Tox to ToxPro. Rocky Tox was a toxicology laboratory located in Durango, Colorado, that Mr. Rosenburg owned.

### B.    Acquisition of Rocky Tox

After extensive negotiations and due diligence, on or about April 10, 2015, ToxPro acquired Rocky Tox pursuant to the *Agreement for Purchase and Sale of Membership Interest* (the "***Purchase Agreement***").[9] Rocky Tox then entered into a *Management Services, Equipment, and Office Lease Agreement* (the "***Management Agreement***")[10] with Mash Company Services, LLC, d/b/a Integrity Health Plus ("***IHP***"). Under the Management Agreement, IHP provided management, billing, and accounting services for Rocky Tox. IHP had over 200 employees. Additionally, IHP was also Rocky Tox's landlord. Mr. Rosenburg owned IHP.

### C.    Disputes Arise and Plaintiffs File State Court Lawsuit Against Mr. Rosenburg

Plaintiffs contend that between April 10, 2015, and the fall of 2016, Mr. Rosenburg committed egregious and wrongful acts against them. Additionally, the Plaintiffs contend Mr.

---

[9] Complaint at ¶ 12. The Purchase Agreement was not offered into evidence.
[10] *Id., see also* Exhibit to Complaint at pgs. 35–44.

Rosenburg made several representations of material facts and promises of future performance that were false and intended to induce the Plaintiffs to enter into the Purchase Agreement.

On November 23, 2016, the Plaintiffs initiated a State Court Lawsuit[11] against Mr. Rosenburg. In the State Court Lawsuit, the Plaintiffs asserted the following claims and causes of action against Mr. Rosenburg:

- Fraud, Fraud by Omission, Fraud by Concealment, Misrepresentation, Fraud by Non-Disclosure, and Fraud in the Inducement;[12]

- Breach of Management Agreement;[13]

- Tortious Interference with Contracts;[14]

- Unjust Enrichment/Restitution;[15]

- Civil Conspiracy/Aiding and Abetting;[16]

- Constructive Trust;[17]

- Negligence/Negligent Misrepresentation;[18]

- Declaratory Judgment;[19] and

- Conversion/Texas Theft and Liability Act/Breach of Fiduciary Duty.[20]

---

[11] *ToxPro Laboratories, LLC, Gary and Heidi Hollingsworth, and Rocky Toxicology, LLC v. Wade Rosenburg*; Cause No. DC-16-15120 (the "***State Court Lawsuit***") filed in the 162nd Judicial District Court of Dallas County, Texas (the "***Texas State Court***").
[12] Ex. 6 at pg. 13.
[13] Ex. 6 at pg. 15.
[14] Ex. 6 at pg. 16.
[15] Ex. 6 at pg. 17.
[16] Ex. 6 at pg. 18.
[17] Ex. 6 at pg. 19.
[18] Ex. 6 at pg. 20.
[19] Ex. 6 at pg. 21.
[20] Ex. 6 at pg. 22.

D.       **Settlement Agreement and Agreed Final Judgment**

On March 28, 2019, the Plaintiffs and Mr. Rosenburg entered into a Settlement Agreement[21] resolving the State Court Lawsuit. The Settlement Agreement provides, in pertinent part:

- Mr. Rosenburg agreed to pay the Plaintiffs $700,000 in various installment payments over a thirty-eight-month period;[22]

- If Mr. Rosenburg failed to timely make any of the above installment payments, then an *Agreed Final Judgment*[23] in the amount of $1,175,000 would be entered against Mr. Rosenburg in the State Court Lawsuit;[24]

- Upon execution of the Settlement Agreement, the Plaintiffs released Mr. Rosenburg "of and from any and all claims, demands, causes of action, controversies, liabilities, obligations, and damages of any kind, and excepting only claims relating to breach of this Agreement;"[25] and

- Mr. Rosenburg denied all allegations asserted by the Plaintiffs.[26]

Mr. Rosenburg defaulted on the terms of the Settlement Agreement, and on August 6, 2019, the Plaintiffs filed a motion in the Texas State Court seeking the entry of the Agreed Final Judgment.

On September 18, 2019, the Texas State Court entered the Agreed Final Judgment. Based on the Agreed Final Judgment, the Plaintiffs were awarded judgment against Mr. Rosenburg in the amount of $1,175,939.65 plus costs and interest (the "***Liquidated Claim***").

Neither the Settlement Agreement nor the Agreed Final Judgment contain an admission or finding against Mr. Rosenburg for (i) false pretenses, a false representation, or actual fraud; (ii)

---

[21] Ex. 3.
[22] Ex. 3 at ¶ 1.
[23] Ex. 2.
[24] Ex. 3 at ¶¶ 3, 7.
[25] Ex. 3 at ¶ 11.
[26] Ex. 3 at ¶ 17.

fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; or (iii) willful and malice injury to the Plaintiffs.[27]

## E. Mr. Rosenburg Files his Bankruptcy Case and the Plaintiffs Initiate this Adversary Proceeding

On February 24, 2020, Mr. Rosenburg filed his *Voluntary Petition*[28] initiating the above-captioned Bankruptcy Case.

On June 26, 2020, the Plaintiffs filed their original complaint initiating the above-captioned Adversary Proceeding.[29]

On August 21, 2020, the Plaintiffs filed their Complaint.[30]

## III. CONCLUSIONS OF LAW

By the Complaint, the Plaintiffs seek a judgment that:

- Plaintiffs' Liquidated Claim against Mr. Rosenburg be deemed nondischargeable under 11 U.S.C. § 523(a)(2), (4), and/or (6)—which the Court construes as Counts One, Two, and Three respectively; and

- Mr. Rosenburg be denied a discharge under 11 U.S.C. § 727(c), (d), and/or (e)—which the Court construes as Count Four.[31]

In addition to the findings of fact and conclusions of law the Court made on the record after Mr. Rosenburg's oral motion for a directed verdict[32] (which are incorporated herein by reference), the Court makes these additional findings of fact and conclusions of law.

---

[27] Many of the alleged acts that the Plaintiffs contend Mr. Rosenburg committed occurred prior to the Settlement Agreement and Agreed Final Judgment. Consequently, Mr. Rosenburg contends such claims were waived and released. The Court does not need to determine if the Settlement Agree or Agreed Final Judgment waived and released such claims because the Plaintiffs' claims all fail on the merits as detailed herein.

[28] Ex. 5.

[29] Adv. ECF No. 1.

[30] Adv. ECF No. 7.

[31] Ex. 1. The *Adversary Proceeding Cover Sheet*, Adv. ECF No. 7 at pg. 1, checked the box indicating that the suit included a cause of action objecting to the Defendant's discharge under 11 U.S.C. § 727(c), (d), and (e), but, other than a reference to § 727 in paragraph 5, the Complaint failed to include (i) any factual contentions that support a § 727 cause of action finding, or (ii) any counts specifically seeking relief under § 727.

[32] 4/22/2022 hrg. at 11:09:00 am.

A.      **Count One: 11 U.S.C. § 523(a)(2)**

A debt may be declared nondischargeable under § 523(a)(2) if it is a debt "for money . . . or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."[33] The Plaintiffs contend that Mr. Rosenburg owes a debt to the Plaintiffs for money, property, services, or an extension, renewal, or refinancing of credit obtained by false pretenses, a false representation, or actual fraud.[34]

The Fifth Circuit distinguishes false pretenses and false representations from "actual fraud" for purposes of § 523(a)(2)(A). False pretenses and false representations require that the creditor prove (i) the existence of a knowing and fraudulent falsehood, (ii) describing past or current facts, and (iii) that was justifiably relied upon by the creditor.[35] A debtor's representation related to a future action does not satisfy § 523(a)(2)(A) for a false pretense or false representation unless, at the time the representation was made, the creditor can establish that the debtor had no intention of fulfilling the promise or representation.[36]

To show actual fraud, the creditor must prove that (i) the debtor made a material representation, (ii) the representation was false, (iii) when the representation was made, the debtor knew it was false or made it recklessly without any knowledge of the truth and as a positive

---

[33] 11 U.S.C. § 523(a)(2)(A).

[34] Adv. ECF No. 4 at 14 ¶ 62.

[35] *See RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995).

[36] *Beshears v. McCool (In re McCool)*, Adv. No. 16-43206, 2019 BL 372248, at *17 (Bankr. N.D. Tex. Sept. 30, 2019) (citing *In re Allison*, 960 F.2d 481, 484 (5th Cir. 1992)); *see also In re Bercier*, 934 F.2d 689, 692 (5th Cir. 1991) (overruled on other grounds by *Husky Intern. Electronics, Inc. v. Ritz*, 136 S.Ct. 1581 (2016)). *Husky* made clear that no misrepresentation is necessary to establish an "actual fraud" under § 523(a)(2)(A) of the Bankruptcy Code. Courts in the Fifth Circuit continue to follow *Bercier*'s requirement that a "false representation" under § 523(a)(2)(A) must relate to past or current facts. *See, e.g., In re Carter*, No. 17-35082, 2018 WL 6060391, at *23 (Bankr. S.D. Tex. Nov. 19, 2018); *In re Martin*, No. 15-41103, 2017 WL 1316928, at *10 (Bankr. E.D. Tex. Apr. 7, 2017).

assertion, (iv) the debtor made the representation with the intent that the creditor should act upon it, (v) the creditor acted in reliance on the representation, and (vi) the creditor thereby suffered an injury.[37]

Therefore, to establish that Mr. Rosenburg made a false pretense or false representation, the Plaintiffs must prove that (i) Mr. Rosenburg (and not someone else) knowingly made a false representation; (ii) the false representation described a past or current fact; and (iii) the Plaintiffs justifiably relied on the representation.[38] To satisfy the reliance element, the Supreme Court has held that the degree of reliance required under § 523(a)(2)(A) is justifiable reliance.[39]

To establish that Mr. Rosenburg committed actual fraud, the Plaintiffs must prove that (i) Mr. Rosenburg (and not someone else) made a material representation; (ii) the representation was false; (iii) when the representation was made, Mr. Rosenburg knew it was false or he made it recklessly without any knowledge of the truth and as a positive assertion; (iv) Mr. Rosenburg made the representation with the intent that the Plaintiffs should act upon it; (v) the Plaintiffs acted in reliance on the representation; and (vi) the Plaintiffs thereby suffered an injury

In support of the § 523(a)(2) claim, the Plaintiffs' Complaint makes the following general contentions against Mr. Rosenburg:

    (i)    Mr. Rosenburg made false statements during negotiations to induce ToxPro to purchase Rocky Tox;[40]

    (ii)    Mr. Rosenburg made false statements regarding the management and oversight of the Wells Fargo bank account;[41] and

---

[37] *See Saenz v. Gomez*, 899 F.3d 384, 391 (5th Cir. 2018) (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)).
[38] *Selenberg v. Bates (In re Selenberg)*, 856 F.3d 393, 398 (5th Cir. 2017).
[39] *Field v. Mans*, 516 U.S. 59, 70–71 (1995).
[40] Adv. ECF No. 7, pgs. 5–7, ¶¶ 9–12.
[41] Adv. ECF No. 7, pgs. 5–7, ¶¶ 9–11.

(iii)    Mr. Rosenburg acted fraudulently with insurance providers, billing companies, other laboratories, and the Plaintiffs.[42]

The Court will address each contention in turn.

### *(i)    Mr. Rosenburg made false statements during negotiations to induce ToxPro to purchase Rocky Tox*

The Plaintiffs allege that Mr. Rosenburg made false statements and mislead them during the negotiations  preceding the Plaintiffs' purchasing of Rock Tox from Mr. Rosenburg.    The Plaintiffs, however, presented no credible evidence to support this contention. Specifically, the Plaintiffs failed to show that Mr. Rosenburg ever made any false representation during the sales negotiations.

The only evidence the Plaintiffs presented about any such representations was Mr. Hollingsworth's testimony that Mr. Rosenburg made a false representation about the management fees IHP would charge. Because the alleged representation concerned a future act, as opposed to a past or current act, the alleged representation does not satisfy the required elements for a false pretense or false representation. Furthermore, both Mr. Rosenburg and Mr. Brent Brudwick, the Chief Financial Officer of IHP ("*Mr. Brudwick*"), testified credibly when they disputed Mr. Hollingsworth's testimony. Furthermore, even if Mr. Hollingsworth's testimony was not disputed, his testimony alone did not support or satisfy the Plaintiffs' burden to establish fraud.

Therefore, the Plaintiffs failed to meet their burden to establish that Mr. Rosenburg (i) made false pretenses or false representations to any of the Plaintiffs or (ii) committed fraud to induce ToxPro to purchase Rocky Tox. As such, Count One, based on this contention, is **DENIED**.

---

[42] Adv. ECF No. 7, pgs. 8–12, ¶¶ 15–23.

### (ii) *Mr. Rosenburg made false statements regarding the management and oversight of the Wells Fargo bank account*

The Plaintiffs allege that Mr. Rosenburg made false statements regarding the management and oversight of the Wells Fargo bank account. The Plaintiffs, however, presented no credible evidence to support this contention. The only evidence the Plaintiffs presented in support of this contention was Mr. Hollingsworth's uncorroborated testimony that Mr. Rosenburg must have taken $1,175,939.65 that had at one time been in the Wells Fargo account and $386,000 from the Wells Fargo bank account after Mr. Hollingsworth allegedly froze the account. Both Mr. Rosenburg and Mr. Brudwick testified credibly when they disputed Mr. Hollingsworth's testimony.

The credible evidence established that the Management Agreement authorized IHP to access the Wells Fargo bank account, and many IHP employees—not just Mr. Rosenburg—had access to the Wells Fargo bank account. Finally, no credible evidence was offered to establish, or even suggest, that Mr. Rosenburg made false pretenses, false statements, or committed any fraud regarding the Wells Fargo bank account.

Therefore, Plaintiffs failed to meet their burden to establish that Mr. Rosenburg (i) made false pretenses or false representations to any of the Plaintiffs or (ii) committed fraud regarding the Wells Fargo bank account. As such, Count One, based on this contention, is **DENIED**.

### (iii) *Mr. Rosenburg acted fraudulently with insurance providers, billing companies, other laboratories, and the Plaintiffs*

The Plaintiffs allege that Mr. Rosenburg acted fraudulently with insurance providers, billing companies, other laboratories, and the Plaintiffs. The Plaintiffs presented no credible evidence in support of this contention. On the other hand, Mr. Rosenburg and Mr. Brudwick both testified credibly that neither Mr. Rosenburg nor IHP diverted business from Rocky Tox to other

10

entities owned by Mr. Rosenburg. They further testified that Rocky Tox did not own or have access to the necessary equipment to perform some testing of certain specimens that had been sent to Rocky Tox. Therefore, Rocky Tox referred these certain specimens to other laboratories that had the capabilities and required equipment to test and analyze such specimens.

Therefore, the Plaintiffs failed to meet their burden to establish that Mr. Rosenburg (i) made false pretenses or false representations to any of the Plaintiffs or (ii) committed fraud regarding insurance providers, billing companies, other laboratories, and the Plaintiffs. As such, Count One, based on this contention, is **DENIED**.

## B.      Count Two: 11 U.S.C. § 523(a)(4)

A debt may be declared nondischargeable under § 523(a)(4) "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[43]

Regarding fraud or defalcation claims under § 523(a)(4), courts typically focus on two elements: (i) whether the debtor was acting in a fiduciary capacity and (ii) whether the debtor's actions consciously disregarded "a substantial and unjustifiable risk" that would violate a fiduciary duty.[44]

When interpreting the fiduciary-capacity element, "the concept of a fiduciary [under § 523(a)(4)] is narrowly defined, applying only to technical or express trusts, and not those which the law implies from the contract."[45] The alleged trust relationship must have existed prior to the act creating the debt and without reference to that act.[46]

---

[43] 11 U.S.C. § 523(a)(4).
[44] *See Chaney v. Grigg* (*In re Grigg*), 619 F. App'x 195, 197–98 (3d Cir. 2015).
[45] *See LSP Inv. P'ship v. Bennett* (*In re Bennett*), 989 F.2d 779, 784 (5th Cir. 1993) (citing *Angelle v. Reed*, 610 F.2d 1335, 1338 (5th Cir. 1980)).
[46] *Id.* (the alleged trust relationship must have existed prior to the act creating the debt); *see also Lester*, 2018 BL 356899 at *10 ("To bar discharge, the debtor must have been acting in a fiduciary capacity at the time of the defalcation.").

Fraud in this context requires positive fraud involving moral turpitude or intentional wrong.[47] Conversely, a finding of defalcation requires a culpable state of mind "involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior."[48]

To prevail, the Plaintiffs must establish (i) that Mr. Rosenburg acted as a fiduciary to the Plaintiff at the time the debt was created and (ii) the debt was caused by fraud or defalcation arising in that fiduciary relationship.[49]

A debt may also be declared nondischargeable under § 523(a)(4) for embezzlement or larceny.[50] For embezzlement debts, courts generally follow the common law definition of embezzlement, which is "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come."[51] "A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud."[52] Larceny is the fraudulent, wrongful taking, and carrying away of somebody else's property with the intent to convert it to the taker's use and to deprive the owner of the property permanently.[53] Other than the manner in which the funds come into possession of a party, larceny

---

[47] *Lester v. Dean*, Adv. No. 16-4147, 2018 BL 356899, *24 (Bankr. N.D. Tex. Sep. 29, 2018) (citing *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273 (2013)).

[48] *Bullock*, 569 U.S. at 269.

[49] *Estate of Cora v. Jahrling (In re Jahrling)*, 816 F.3d 921, 925 (7th Cir. 2016); *see also Lester*, 2018 BL 356899, at *25 (finding no debt to except from discharge under § 523(a)(4) where plaintiff failed to prove any damages arising from alleged misconduct).

[50] 11 U.S.C. § 523(a)(4).

[51] *Miller v. J.D. Abrams Inc.* (*In re Miller*), 156 F.3d 598, 602 (5th Cir. 1998).

[52] *Id*. at 603 (quoting *Brady v. McAllister,* 101 F.3d 1165, 1173 (6th Cir. 1996)).

[53] *Smith v. Hayden (In re Hayden)*, 248 B.R. 519, 526 (Bankr. N.D. Tex. 2000) (emphasis omitted).

Case 20-04046-mxm    Doc 55    Filed 09/06/22    Entered 09/06/22 15:21:34    Page 13 of 15

does not differ from embezzlement.[54] Embezzlement and larceny both require proof of the debtor's fraudulent intent in taking the property.[55]

To prevail, the Plaintiffs must show that (i) they entrusted Mr. Rosenburg with their property and (ii) Mr. Rosenburg intended to fraudulently convert that property as his own.

The Plaintiffs offered no credible evidence to establish that Mr. Rosenburg was acting in a fiduciary capacity to, for, or on behalf of the Plaintiffs. Rather, the overwhelming credible evidence, through the testimony of Mr. Rosenburg and Mr. Brudwick, established that Mr. Rosenburg had very little contact with the Plaintiffs and was rarely involved in their day-to-day operations or IHP's day-to-day operations.

Assuming Mr. Rosenburg was acting in a fiduciary capacity, the Plaintiffs specifically contend that Mr. Rosenburg stole the separate amounts of $1,175,939.65 and $386,000 from the Wells Fargo bank account. The only evidence the Plaintiffs presented to support these contentions was Mr. Hollingsworth's uncorroborated testimony. Both Mr. Rosenburg and Mr. Brudwick, however, testified credibly that Mr. Rosenburg did not take, steal, or embezzle any of the Plaintiffs' funds and that such funds were used in the ordinary course of the Rocky Tox business.

Therefore, the Plaintiffs failed to meet their burden to establish that Mr. Rosenburg (i) was acting in a fiduciary capacity or that he committed any fraud or defalcation or (ii) committed an embezzlement or larceny. As such, Count Two, based on these contentions, is **DENIED**.

## C.    Count Three: 11 U.S.C. § 523(a)(6)

A debt may be declared nondischargeable under § 523(a)(6) "for willful and malicious injury by the debtor to another entity or to the property of another entity."[56] Section 523(a)(6)

---

[54] *Id.*
[55] *See id.*
[56] 11 U.S.C. § 523(a)(6).

13

requires "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."[57] In the Fifth Circuit, "an injury is 'willful and malicious' where there is either (1) an objective substantial certainty of harm arising from a deliberate or intentional action or (2) a subjective motive to cause harm by a party taking a deliberate or intentional action."[58] "[T]he debtor must have intended the actual injury that resulted."[59] In addition to satisfying this two-part test, the injury must "not be sufficiently justified under the circumstances to render it not 'willful and malicious.'"[60]

To prevail under § 523(a)(2)(6), the Plaintiffs must establish that (i) Mr. Rosenburg (as opposed to some other person or entity) had (a) an objective substantial certainty of harm arising from his deliberate or intentional action, or (b) a subjective motive to cause harm to the Plaintiffs by acting deliberately or intentionally; (ii) the injury was not sufficiently justified under the circumstances to render it not willful and malicious; and (iii) the debt to be excepted from discharge arose from such willful and malicious injury.

The Plaintiffs assert that their debts arose though Mr. Rosenburg's willful and malicious acts. To support this cause of action, the Plaintiffs contend that Mr. Rosenburg's bad acts were done with the subjective intent to injure the Plaintiffs.

The Plaintiffs offered no credible evidence to suggest, let alone establish, that Mr. Rosenburg had a subjective intent to willfully and maliciously injure the Plaintiffs. Again, other than Mr. Hollingsworth's uncorroborated testimony, the Plaintiffs offered no credible evidence to

---

[57] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis omitted).
[58] *Ward Family Found. v. Arnette* (*In re Arnette*), 454 B.R. 663, 700 (Bankr. N.D. Tex. 2011) (citing *In re Miller*, 156 F.3d at 604–06).
[59] *Texas v. Walker*, 142 F.3d 813, 823 (5th Cir. 1998).
[60] *In re Vollbracht*, 276 F. App'x 360, 362 (5th Cir. 2007).

suggest, let alone establish, that Mr. Roseburg engaged in any act intending to willfully and maliciously injure the Plaintiffs.

Therefore, the Plaintiffs failed to meet their burden to establish that Mr. Rosenburg willfully or maliciously injured the Plaintiffs or their property. As such, Count Three is **DENIED**.

**D.      Count Four: 11 U.S.C. § 727**

The Plaintiffs contend that the Court should deny Mr. Rosenburg's discharge under § 727(c), (d), and/or (e).[61] The Plaintiffs, however, presented no credible evidence to support a finding that Mr. Rosenburg's discharge should be denied under § 727. Therefore, Count Four is **DENIED**.

## IV.      CONCLUSION

For the forgoing reasons, the Court finds and concludes that the Plaintiffs failed to satisfy their burden to establish that the Plaintiffs' Liquidated Claim against Mr. Rosenburg should be declared nondischargeable under § 523 or that Mr. Rosenburg should be denied a discharge under § 727. Therefore, each of the claims and causes of action contained in Counts One, Two, Three, and Four of the Complaint are denied.

The Court will enter a separate final judgment consistent with these Findings of Fact and Conclusions of Law.

### ### END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW ###

---

[61] Adv. ECF No. 31, p. 2, ¶ 5.